**Edwin KERR, Plaintiff-Appellant,**

v.

**COMPAGNIE DE ULTRAMAR and Transmar Corp., Defendants-Appellees.**

**No. 105, Docket 24742.**

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1957.

Decided Jan. 8, 1958.

Daniel H. Greenberg, New York City (Abraham M. Fisch, New York City, of counsel, on the brief), for plaintiff-appellant.

John G. Poles, New York City (Yorkston W. Grist and Poles, Grist, Tublin & Patestides, New York City, of counsel, on the brief), for defendants-appellees.

Before HAND, HINCKS and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The question for decision is whether the District Court properly granted the motion of the defendants to dismiss this civil action because there was no diversity of citizenship between plaintiff and one of the defendants, and whether it properly refused to grant the cross-motion of the plaintiff to dismiss as to the non-diverse defendant so that the Court could retain jurisdiction. We find error in these rulings and reverse the order of the District Court.

The genesis and course of the litigation are pertinent to our disposition of this appeal. The plaintiff, Edwin Kerr,

a longshoreman and a resident of New York, commenced an action in admiralty on July 3, 1956 against both defendants alleging that, while working on the vessel S. S. Zephyr on June 15, 1956 he was injured due to the negligence of the defendants and the unseaworthiness of a winch aboard that vessel. He further alleged that the vessel was owned or chartered by the defendants or either of them. He thereafter commenced the present civil jury action on August 27, 1956, based upon the same allegations, and alleged diversity of citizenship as the basis of jurisdiction.

Transmar, in its answer to the civil complaint, denied that it was a foreign corporation although "organized under the laws of one of the States of the United States," and further denied that it was the owner or charterer of the S. S. Zephyr, or that it otherwise controlled the vessel. At the same time, Ultramar appeared specially and moved to dismiss the action against it on the ground that it had not been properly served and was not doing business in the United States and hence that the Court did not have jurisdiction over it.

Plaintiff, to meet this contention of Ultramar, served notice to take the deposition of Transmar as to the facts of Ultramar's doing business in New York. Rather than have Transmar submit to this examination, Ultramar agreed to withdraw its special appearance and motion to dismiss and to file its answers both in this action and in the admiralty action. Ultramar's answer to the civil complaint, filed on October 18, 1956, admitted its foreign incorporation and its ownership of the S. S. Zephyr but denied that Ultramar had a place of business in New York City.

Defendants moved on November 19, 1956 to dismiss the civil action on the ground that the prior action in admiralty constituted an irrevocable election and waiver of the right to a civil jury trial. Judge Bicks reserved decision on the motion until our decision in McAfoos v. Canadian Pacific Steamships, 2 Cir., 1957, 243 F.2d 270, certiorari denied 78

S.Ct. 32, where we held that the commencement of the admiralty action did not bar the bringing of a civil suit and a jury trial under the Jones Act, 46 U.S.C.A. § 688, on the same allegations, and he then denied the motion to dismiss.

Within the week defendants moved for dismissal of this civil action for lack of jurisdiction because of the absence of complete diversity of citizenship, asserting in an accompanying affidavit that Transmar was a New York corporation. Plaintiff cross-moved to dismiss Transmar and to proceed with the action against Ultramar. By affidavit and in argument Ultramar contended that it had been entrapped into appearing generally and that therefore it would be inequitable to drop Transmar and to allow the action to continue against it when it had lost its right to contest jurisdiction over the person. Judge Murphy, while doubting that Ultramar had been entrapped into appearing voluntarily, indicated that the plaintiff would suffer no inconvenience other than filing another complaint and that Ultramar ought to have the opportunity to contest jurisdiction over the person. Accordingly, he granted the motion to dismiss the action and treated the cross-motion as moot.

The defendants seek to support the dismissal below on two grounds. The first ground, not relied upon by the District Court, is that the District Court lacked the power to dismiss the non-diverse defendant and to retain jurisdiction over Ultramar. They argue that the jurisdiction of the federal court, or lack of jurisdiction, was irrevocably determined by the acts of the plaintiff in joining the defendants. Consequently, once it appeared that there was less than complete diversity of citizenship, the court was powerless to permit the dismissal of the non-diverse defendant. The court had no jurisdiction, so it is contended, to create jurisdiction retroactively by dismissal of Ultramar.

In support of this contention, defendants rely on Johnston v. Oregon Electric Railway Co., D.C.Or.1956, 145 F.Supp. 143; McGrier v. P. Ballantine

and Sons, D.C.E.D.N.Y.1942, 44 F.Supp. 762; and Chase v. Lathrope, D.C.E.D.N.Y.1918, 254 F. 713. These cases are the shades of a formalism which we had thought long dead and interred. It has long been established that a federal court, on motion of the plaintiff, may drop a non-diverse defendant and retain jurisdiction if that party is not indispensable. In Horn v. Lockhart, 1873, 17 Wall. 570, 579, 84 U.S. 570, 579, 21 L.Ed. 657, the Court stated:

"And the question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether to a decree authorized by the case presented, they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to them."

The propriety of dismissing a dispensable party to maintain diversity has subsequently been recognized in numerous cases.[1] Indeed, recent cases, taking this principle as well settled, have gone on to deal primarily with ramifications of the problem.[2]

■ In the instant case, liability was predicated on the ownership or charter of the vessel S. S. Zephyr by the defendants or either of them and on their negligence and breach of their warranty of seaworthiness. The complaint can be interpreted as alleging joint liability or as alleging claims in the alternative, the ground on which plaintiff now appears to

rely. In either case, Transmar was not an indispensable party. If the facts should establish a joint culpability for negligence, the parties would be jointly and severally liable for the commission of a maritime tort. Unseaworthiness "is essentially a species of liability without fault, analogous to other well known instances in our law." Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099; it is a maritime tort, one which imposes an absolute duty on owners and charterers to provide a seaworthy vessel. See Pope and Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555, 558, certiorari denied 1951, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343. It is also clear that if the liability is claimed to be alternative, joinder of the parties is not compulsory. The plaintiff initially could have proceeded against Ultramar, and a judgment against it would not have worked an injustice to Transmar. See Gramatan-Sullivan, Inc. v. Koslow, 2 Cir., 1957, 240 F. 2d 523, certiorari denied 1957, 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909; Wells v. Universal Pictures Co., 2 Cir., 1948, 166 F.2d 690. Clearly the District Court had the power to drop Transmar as a party defendant in order to maintain complete diversity of citizenship.[3]

■ Plaintiff, both below and on appeal, has argued that the procedural vehicle for his motion is Rule 21 of the Federal Rules of Civil Procedure, 28 U.S.C.A., citing Weaver v. Marcus, 4 Cir., 1948, 165 F.2d 862, 175 A.L.R. 1305, and Sa-

---

1. See e. g. Levering & Garrigues Co. v. Morrin, 2 Cir., 1932, 61 F.2d 115, 121, affirmed on other grounds 1933, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Weaver v. Marcus, 4 Cir., 1948, 165 F.2d 862, 175 A.L.R. 1305; Interstate Refineries v. Barry, 8 Cir., 1925, 7 F.2d 548; Dollar S. S. Lines v. Merz, 9 Cir., 1931, 68 F.2d 594.

2. See e. g. American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 18, footnote 18, 71 S.Ct. 534, 95 L.Ed. 702; Finn v. American Fire & Casualty Co., 5 Cir., 1953, 207 F.2d 113, certiorari denied

1954, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069; Wells v. Universal Pictures Co., 2 Cir., 1948, 166 F.2d 690; Grant County Deposit Bank v. McCampbell, 6 Cir., 1952, 194 F.2d 469; Alderman v. Elgin, J. & E. Ry. Co., 7 Cir., 1942, 125 F.2d 971.

3. Our comments regarding the dispensability of Transmar are based upon the plaintiff's allegations. The final determination of the status and liability of any party will always depend upon the facts developed during the course of the litigation.

voia Films S. A. I. v. Vanguard Films, D.C.S.D.N.Y.1950, 10 F.R.D. 64. It is questionable whether he should have proceeded under this rule or any of the rules. Rule 21, following the rules dealing with joinder of claims and parties, states:

"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

Technically there has been no misjoinder of parties here. From all that appears thus far the parties are correctly joined as joint tortfeasors or as liable in the alternative; the dimensions of the action are no larger than the rules permit. Because, however, of the limitations on federal jurisdiction, such otherwise proper joinder destroys the jurisdiction of the court. Rule 21 was adopted to obviate the harsh common law adherence to the technical rules of joinder, Moore's Federal Practice § 21.03(2 ed. 1948), and not in order to deal with problems of defective federal jurisdiction. Here the plaintiff is not seeking to drop a party in order to cure defects of misjoinder or non-joinder. The motion more properly is an amendment of the pleadings under Rule 15(a) [4] which would result in a dismissal of the complaint against Transmar, or it may be based solely on the inherent powers of the court to perfect federal jurisdiction. See Horn v. Lockhart, 1873, 17 Wall. 570, 579, 84 U.S. 570, 579, 21 L.Ed. 657.

■ Regardless of the procedural vehicle for the motion, unless it appears that a non-diverse defendant cannot be dropped from an action without prejudice to the remaining defendants, the motion should be granted and a failure to do so is an abuse of discretion.

■ Although the District Court doubted that Ultramar had been entrapped into appearing generally, it felt that Ultramar might have lost the right to contest jurisdiction over the person and would be prejudiced by its inadvertent waiver of this right. The belief that Ultramar has lost its right to establish lack of jurisdiction over its person by showing that it was not doing business in New York is apparently based on a legal misconception. By Rule 12(b), Federal Rules of Civil Procedure, jurisdiction over the person may be attacked either by motion or by answer. A voluntary general appearance does not constitute a waiver of this defense if it is properly raised in the answer. Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, certiorari denied Orange Theatre Corp. v. Brandt, 1944, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573; Blank v. Bitker, 7 Cir., 1943, 135 F.2d 962; Emerson v. National Cylinder Gas Co., D.C.Mass.1955, 131 F.Supp. 299.

■ Even if we were to assume that the defense of lack of jurisdiction over the person had been waived, the motion to dismiss as to Ultramar should have been granted. Rather than have Transmar's deposition taken regarding the facts of Ultramar's doing business in New York, Ultramar chose to answer. The lower court doubted that there was any entrapment by the plaintiff; even if Ultramar were foreclosed by a tactical error from raising a defense, that does not entitle it to a dismissal of the entire action so that it may begin again. Especially is this true when events subsequent to the commencement of the civil action

---

4. Rule 15(a) "Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires * * *" See also Rule 1. "These rules * * * shall be construed to secure the just, speedy, and inexpensive determination of every action."

may have made it impossible for the plaintiff to obtain service on Ultramar, as plaintiff suggests, and hence the dismissal would effectively destroy plaintiff's opportunity to secure jurisdiction in a civil action.

As there has been no showing that defendant Ultramar would be prejudiced by the dismissal of Transmar from the action at this stage of the case, it was an abuse of discretion to deny the motion and accordingly we reverse and remand for further proceedings consistent with this opinion.